UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-902-RGJ

CHRISTIAN OMAR WALKER                                                                        Petitioner

v.

KEVIN MAZZA, WARDEN                                                                         Respondent

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Petitioner Christian Omar Walker ("Walker") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. 2254 ("Petition"). [DE 1]. Respondent Kevin Mazza ("Mazza") moved to dismiss [DE 8] and Walker responded [DE 11]. Mazza submitted into the record a video copy of the April 23, 2015 evidentiary hearing held in the Jefferson Circuit Court. [DE 9, 10]. The Magistrate Judge filed Findings of Fact and Recommendation the motion to dismiss be granted, the Petition be dismissed, and a certificate of appealability be denied ("R&R"). [DE 12]. Walker timely filed objections. [DE 13]. The matter is ripe. Having reviewed *de novo* the portions of the R&R to which Walker objected, the Court ADOPTS the Magistrate Judge's Findings of Fact and Recommendation and OVERRULES Walker's objections.

**I.        BACKGROUND**

The full facts are in the Supreme Court of Kentucky's opinion in *Walker v. Commonwealth*, 288 S.W.3d 729 (Ky. 2009). On December 8, 2004, Walker, and co-defendant Tywan Beaumont ("Beaumont"), attempted an armed robbery of Phillip Thomas at his home. [DE 1 at 44]. During the robbery, Phillip Thomas's girlfriend, Jutta Whitlow ("Whitlow"), and mother, Shirley Thomas ("Shirley"), were shot. Shirley died.

Walker and Beaumont were charged with complicity to robbery, assault, murder, and tampering with evidence. [DE 1 at 58]. At the trial in 2007, the evidence did not establish whether it was Walker or Beaumont who shot Shirley. [DE 1 at 58]. Beaumont's counsel admitted Beaumont shot Whitlow. [DE 1 at 58]. But Beaumont argued Walker shot Shirley. [DE 1 at 58]. Walker denied he shot Shirley. [DE 1 at 58]; *Walker*, 288 S.W.3d at 733-34. Walker's "testimony differed significantly in some respect from the Commonwealth's theory of the case." *Walker*, 288 S.W.3d at 733. The jury convicted Walker of complicity to murder, complicity to first degree robbery, complicity to second degree assault, and complicity to tampering with physical evidence. [DE 1 at 43].

In 2009, the Kentucky Supreme Court affirmed Walker's convictions on direct appeal for complicity to murder, complicity to robbery, and complicity to assault, but reversed his conviction for complicity to tampering with physical evidence. *Walker*, 288 S.W.3d at 731; [DE 1 at 1].

In 2012, Walker moved to vacate, set aside, or correct his sentence with the Jefferson Circuit Court under Kentucky Rule of Criminal Procedure 11.42. [DE 1 at 3]. Walker argued that his trial counsel was ineffective for failing to interview and secure the trial testimony of several witnesses, including Kevin Faye ("Faye"). [DE 1 at 22]. Walker argues Faye heard Beaumont admit to shooting Shirley. *Id.*

In 2014, Walker obtained an affidavit from Faye, which states, "Tywen Beaumont told me that he shot Shirley Thomas and Jutta Whitlow." [DE 1 at 69]. The trial court held an evidentiary hearing on April 23, 2015 in which Faye testified. [DE 1 at 35]. The trial court denied Walker's motion and Walker's argument that his counsel was ineffective for not securing Faye's testimony at trial. [DE 1 at 40]. The trial court held Walker's

> assertions that the witnesses would have testified to certain facts is unsupported by actual evidence. Further, the jury did hear the testimony of Jamilah McNealy, Mr.

> Beaumont's girlfriend, in which she testified that Mr. Beaumont admitted to shooting a woman. Most importantly, Mr. Walker was convicted on Complicity to Murder, and the Commonwealth did not have to prove that he was the shooter, rather the jury only had to find that he aided and abetted Mr. Beaumont in the murder. Presenting more witnesses that testified that Mr. Beaumont was the shooter, would not refute the Commonwealth's evidence that Mr. Walker was complicit in the murder.

[DE 1 at 39-40]. The trial court's denial of Walker's motion to vacate his sentence was affirmed by the Kentucky Court of Appeals. *Walker v. Comm.*, No. 2017-CA-000943-MR, 2019 WL 259444, at *1 (Ky. Ct. App. Jan. 18, 2019), review denied (Oct. 24, 2019). The Kentucky Court of Appeals held as follows as it relates to the effect of Faye's testimony:

> [Faye's] testimony was vague and did not support Walker's current claims. Faye admitted he knew neither Walker nor Beaumont prior to the incident. Faye then testified he overheard Beaumont talking to someone in a store. On direct questioning, Faye stated he overheard the conversation the day after the shooting. On cross-examination, mere minutes later, Faye said the conversation was two or three days after the shooting. Faye testified:
>
>> I overheard [Beaumont] talking to somebody else, then I butted in, and he kinda like told me it was him that said, you know. He really didn't go into any implications, but I kinda knew he did it. Just the way he was talking and acting.
>
> Contrary to Walker's assertions, this testimony was not proof of a solid confession from Beaumont that he shot both Whitlow and Shirley.
>
> The trial court noted "most importantly" that Walker was convicted on complicity to murder; thus, the Commonwealth did not have to prove Walker was the shooter, instead, the jury only had to find Walker aided and abetted Beaumont in the murder. Therefore, an additional witness testifying Beaumont was the shooter would not refute the Commonwealth's evidence Walker was complicit in the murder.
>
> Although Walker believes the verdict could have been different had counsel performed better or differently, his assertions are speculative. He fails to establish a substantial likelihood the jury would have returned a different verdict absent counsel's failure to conduct further investigation or call Faye as a witness. There was no prejudicial effect on his trial. As such, Walker has failed to demonstrate the trial's outcome would have been any different had the jury heard Faye's testimony.

*Walker*, 2019 WL 259444, at *3–4. The Kentucky Supreme Court denied discretionary review on October 24, 2019.

Walker filed the present Petition on December 9, 2019. [DE 1]. Mazza moved to dismiss and Walker responded. [DE 8, 11]. Mazza submitted into the record a video copy of the April 23, 2015 evidentiary hearing held in the Jefferson Circuit Court where Kevin Faye testified. [DE 9, 10]. Neither Mazza nor Walker submitted the entire state court record to the Court in this matter. Instead, both parties have submitted the portions of the state court record which they deem relevant, and which summarize the proof from Walker's trial. Neither party challenges the state courts' recitation of the evidence from the underlying state court trial.[1]

There is no dispute Walker's Petition was filed outside the one-year statute of limitations set forth in 28 U.S.C. § 2244. [DE 8 at 83; DE 11 at 141]. The issue is whether Walker satisfies the actual-innocence exception to the statute of limitations, the standard of which is set forth below, and which requires he make a credible showing of actual innocence. [DE 8 at 87; DE 11 at 142]; *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018). If this showing is made, then Walker may proceed on his habeas petition to have the merits of his claim considered. *Bradshaw*, 900 F.3d at 326.

Under 28 U.S.C. §§ 636(b)(1)(A) & (B), the Court referred this matter to Magistrate Judge Lanny King. [DE 3]. The Magistrate Judge found Faye's affidavit did not support Walker's claim

---

[1] Walker argues Faye's potential testimony would have impacted the jury's decision to convict him of complicity to murder, but Walker does not object to the accuracy of the state court's summary of the evidence presented at trial. Thus, the Court has reviewed the portions of the underlying record submitted by the parties and need not review the entire record from Walker's trial. *Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007) ("the district court need not examine the trial records [in habeas cases] if two conditions are satisfied: (1) the state court opinions summarize the trial testimony or relevant facts; and (2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion.")

of actual innocence, and thus recommended the motion to dismiss be granted. [DE 12 at 157-58]. The Magistrate Judge recommended no certificate of appealability issue. [DE 12 at 158]. Walker timely objected to the Magistrate Judge's recommendation. [DE 13].

## II.     STANDARD

1. <u>Review of the Magistrate Judge's Report and Recommendation</u>

A district court may refer a motion to a magistrate judge to prepare a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "A magistrate judge must promptly conduct the required proceedings . . . [and] enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). This Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court need not review under a *de novo* or any other standard those aspects of the report and recommendation to which party makes no specific objection and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Thomas v. Arn,* 474 U.S. 140, 149–50, 155 (1985).

A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted). The court does not permit a general objection that fails to identify specific factual or legal issues from the R&R as it duplicates the magistrate judge's efforts and wastes judicial resources. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

2. <u>Actual-Innocence Exception to the Statute of Limitations</u>

A habeas petitioner is entitled to an equitable exception to AEDPA's one-year statute of limitations if he makes a credible showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S. Ct. 1924, 185 L.Ed.2d 1019 (2013); *Souter v. Jones,* 395 F.3d 577, 599 (6th Cir. 2005). This type of actual-innocence claim, sometimes called gateway innocence, "does not by itself provide a basis for relief." *Schlup v. Delo*, 513 U.S. 298, 315, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995). The innocence showing is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993)). To meet this burden, Walker's new evidence must "show[] it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 569 U.S. at 398-400.

The actual-innocence exception "should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin,* 569 U.S. at 401 (citation and internal quotation marks omitted). The exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id*. at 395 (alteration in original) (citation and internal quotation marks omitted); *see Souter*, 395 F.3d at 590.

The court must make a "probabilistic determination about what reasonable, properly instructed jurors would do." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006) (citation omitted). Because a gateway-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would

6

react to the overall, newly supplemented record." *Id*. The court must "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of [new] evidence." *Id*. at 537 (citations and internal quotation marks omitted). For a petitioner to establish entitlement to the actual-innocence exception, he must support his allegations of constitutional error with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial. *Id*.

The Supreme Court found the actual-innocence exception met in a case in which the "the central forensic proof connecting [the petitioner] to the crime—the blood and the semen—ha[d] been called into question and [he] ha[d] put forward substantial evidence pointing to a different suspect." *Id*. at 554. Although it was "not a case of conclusive exoneration," and some evidence still "support[ed] an inference of guilt," the Court held that it was "more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt." *Id*. In *Souter*, the Sixth Circuit held that the petitioner established gateway innocence where he presented compelling scientific evidence that the "only evidence which directly tie[d]" him to the victim's death, could not have caused the victim's injuries. *Souter*, 395 F.3d at 590.

In contrast, the actual-innocence exception was not met when the petitioner's proffered evidence was less reliable. In *Whalen v. Randle*, the Sixth Circuit held that the petitioner was "unable to demonstrate that he was actually innocent" even though his evidence included testimony by his alleged codefendant that the petitioner was not an accomplice in the robberies because of "the doubtful credibility of petitioner's accomplice." 37 F. App'x 113, 121 (6th Cir. 2002). Similarly, in *Knickerbocker v. Wolfenbarger*, where the petitioner presented an inmate's affidavit stating that the petitioner's codefendant had told the affiant that the petitioner did not strangle the murder victim, the Sixth Circuit held that this could not show the petitioner's actual

innocence, in part, because the statements were hearsay, and "thus presumptively less reliable than direct testimony." 212 F. App'x 426, 433 (6th Cir. 2007).

### III. DISCUSSION

The Magistrate Judge found that Walker has not met the standard for the actual-innocence exception to apply. Walker objected to the Magistrate Judge's report on three grounds. First, Walker objects to the Magistrate Judge's "characterization of Mr. Walker's argument as a claim of 'mere legal insufficiency' rather than factual innocence." [DE 13 at 168-69]. The Magistrate Judge stated

> Faye's affidavit does not support Petitioner's claim of actual innocence because '[a]ctual innocence means factual innocence, not mere legal insufficiency.' *Bousley v. United States*, 523 U.S. 614, 615 (1998). Petitioner urges this Court to engage in a 'close review' of the trial evidence, which allegedly shows he did not possess the requisite 'state of mind with respect to the shooter's [i.e., Beaumont's] action' to support a conviction for complicity to murder. [DN 11 at 2, 8, 9]. This is an argument in support of a conclusion of 'legal insufficiency,' not 'factual innocence.' *See Young v. Goeke*, 24 F.3d 243 (8th Cir. 1994) ('To the extent that [Young] challenges her liability as an accomplice, she is making a legal argument and not a showing of actual innocence.')

[DE 13 at 168-69]. Walker argues his "participation in events at the Thomas residence does not make him guilty of Mrs. Thomas's murder . . ." [DE 13 at 169]. But the Magistrate Judge's point is that Faye's affidavit does not show that Walker was innocent of complicity to murder. As Walker points out in his objections, under Kentucky law, a participant in a robbery may be complicit in a killing committed by another participant in the robbery "to the extent that his participation in the robbery establishes, with respect to the killing, a culpable state of mind, whether intent, aggravated, wantonness, wantonness, or recklessness." [DE 13 at 169 (citing *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (emphasis added)]. To the extent that Walker challenges his liability as to the complicity to murder count, the Court agrees with the Magistrate Judge that he is making a legal argument and not a showing of actual innocence. As the Kentucky trial court held, a witness

8

testifying that Beaumont was the shooter of Shirley would not refute the evidence that Walker was complicit in the murder. [DE 1 at 39-40]. To satisfy the actual-innocence exception, Walker must make a credible showing of actual innocence. *Bradshaw*, 900 F.3d at 326. This objection is overruled.

Walker next objects to the Magistrate Judge's "findings that Kevin Faye's statement" was not "new." [DE 13 at 170]. Walker argues "this was new evidence that not only exonerated Mr. Walker on the government's claim that he was the gunman, but completely recast the chain of fatal events in a way that cleared Mr. Walker of complicity, too." [*Id.*]. But Walker misconstrues the Magistrate Judge's statement. The Magistrate Judge stated, "the possibility that Beaumont rather than Petitioner shot [Shirley] Thomas was not 'new' evidence. The Commonwealth's theory of the case was the Petitioner either shot [Shirley] Thomas or he aided and abetting [sic] Beaumont in shooting [Shirley] Thomas. Faye offered no new information regarding whether Petitioner aided and abetted Beaumont." [DE 12 at 157]. The point the Magistrate Judge was making here was the Faye information was not new evidence in that it did not otherwise change the evidence of Walker's participation as complicit in the murder. Walker argues that before Shirley was shot, his "participation had amounted to standing alongside the house, pacing, while Beaumont Attacked Phillip Thomas and Shot Jutta Whitlow," and that "he never saw what happened to Shirley Thomas." [DE 13 at 168]. This was Walker's theory of the case, which the jury heard, but the jury also heard evidence that supported Walker's involvement as more than just walking alongside the house pacing:

> Phillip then noticed another man pacing back and forth on the side of the house, also armed with a handgun and wearing a ski mask. Both men began yelling at Phillip and demanding that he give them his money and any drugs he had . . . [a]fter shooting Jutta, the taller man ran around the side of the house toward the front yard and was followed shortly thereafter by the shorter gunman . . . Adam McMillan lived two houses down from the Thomas house and, on that night, heard shouting

9

>from the alley. As he walked towards the door, he heard a gunshot. He saw two men in black jackets standing on the driver's side of the car yelling for money . . . Adam then ran through the house and out the front door to get his pistol from his truck. While Adam was at his truck in front of his house, he saw an African American man in a dark jacket running towards him. The man, who Adam estimated to be about 6'3", jumped in a parked car, backed it down Camden Avenue, and drove away. Then, as Adam was putting a shell in his gun, he heard two gunshots. Adam looked toward the Thomas house and saw a shorter gunman running at him. Believing that the man was raising a weapon, Adam shot twice at the man, hitting him in the shoulder. Wounded, the shorter gunman ran into the backyard, firing his gun at Phillip before fleeing down an ally. The bullet missed, however, hitting a tire on Phillip's car.

*Walker*, 288 S.W.3d at 732-33. Further, the Kentucky trial court and Kentucky Court of Appeals found "Walker's assertions Faye would have testified to certain facts were 'unsupported by actual evidence.'" *Walker*, 2019 WL 259444, at *3. Given the unreliability of Faye's potential testimony, which is discussed more below, and that Faye's potential testimony would go to who shot Shirley but not Walker's other role in the robbery, Walker has not shown that it is more likely than not that no reasonable juror would not have convicted Walker of complicity to murder. This objection is overruled.

Walker finally objects to the Magistrate Judge's "findings that Kevin Faye's statement" was not "reliable." [DE 13 at 170]. Walker argues "though Mr. Faye varied in his estimate of the number of days that passed between the murder and his conversation with Beaumont, he never wavered on the sole critical fact: Beaumont confessed that he shot Mrs. Thomas." [*Id.*]. But there were more issues with Faye's statement than just his estimate of the timing of his conversation with Beaumont. At the evidentiary hearing held by the trial court, [DE 8; DE 10], Faye was inconsistent about when he overheard Beaumont talking to someone in a store, Faye's recounting of the conversation was vague ("he kinda like told me it was him that said, you know. He really didn't go into any implications, but I kinda knew he did it. Just the way he was talking and acting")

[DE 8 at 88], and Faye's testimony differed from his affidavit. In the 2014 affidavit, which was almost 10 years after the robbery and shooting, Faye says Beaumont used a .38 revolver. But at the 2015 evidentiary hearing, Faye could not remember this detail about the gun, answering "I can't remember, like I told you when we wrote the affidavit." [*Id.*]. Walker's objection to the Magistrate Judge's find that the Faye evidence is unreliable is overruled.

Finally, Walker generally objects to the Magistrate Judge's recommendation that no certificate of appealability be issued. The Magistrate Judge recommended a Certificate of Appealability ("COA") be denied. [DE 12 at 158]. But Walker does not explain specific factual or legal objections to this recommendation. He only objects generally. Presumably Walker objects based on the same arguments referenced above, and thus at a minimum, reasonable jurists could debate whether Walker's claims entitle him to habeas relief.

A COA may issue only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484. When, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

11

dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* In such a case, no appeal is warranted. *Id.*

Walker's Petition is being dismissed based on a procedural ground, and Walker has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Thus, a COA is not warranted.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. The Court's **ADOPTS** the Magistrate Judge's Findings of Fact and Recommendation [DE 12].

2. The Court **ADOPTS** the Magistrate Judge's Recommendation [DE 12] that Walker's Petition and certificate of appealability be denied.

3. The Court **OVERULES** Walker's objections [DE 13] to the Magistrate Judge's Recommendations.

4. The Court **DISMISSES WITH PREJUDICE** Walker's Petition [DE 1].

5. The Court will not issue a certificate of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

6. The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge
United States District Court

March 30, 2021

Copies to:   Counsel of record

12